

IN THE CIRCUIT COURT OF LEE COUNTY, ARKANSAS

JUSTIN CULVER                                                                    PLAINTIFF

VS.                                   NO. 62CV-18-108

STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY                                  DEFENDANT

## COMPLAINT

Comes the plaintiff, Justin Culver, and for his Complaint against the defendant, State

Farm Mutual Automobile Insurance Company, states:

1.      That the plaintiff, JustinCulver, is a resident of St. Francis County, Arkansas.

2.      Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"

hereinafter) is a foreign property casualty insurance company authorized to do business in the

State of Arkansas, with it's home office located in Bloomington, Illinois.

3.      This Complaint alleges causes of action against the defendant, State Farm, relating

to the actions of State Farm, in its issuance of a policy of insurance and handling of a claim

resulting from an automobile accident that occurred in Lee County, Arkansas involving the

plaintiff, Justin Culver and others.  The accident in Lee County, Arkansas, resulted in a lawsuit

filed in Lee County, Arkansas, Circuit Court.

4.      Subject matter jurisdiction is properly vested in this Court pursuant to A.C.A. §

16-13-201. This Court has personal jurisdiction over the parties because of the defendants'

presence and business activities in the state and pursuant to A.C.A. § 16-4-101.

5.      A substantial part of the events giving rise to this claim occurred in Lee County,

Arkansas, therefore venue properly lies in this in this court pursuant to A.C.A.§ 16-60-101(a)(1).

FILED
AT 3:10 O'CLOCK P M
JUL 1 2 2018

LEE COUNTY CIRCUIT CLERK
MARIANNA, ARKANSAS

## STATEMENT OF FACTS GIVING RISE TO PLAINTIFFS' CLAIMS AGAINST THE DEFENDANTS

6.    The averments contained in paragraphs 1 through 5 above are hereby incorporated by reference.

7.    The defendant, State Farm, for proper consideration, did on June 11, 2016, issue and deliver to Justin Culver a policy of insurance on his 2015 Buick Regal automobile (Policy No.: 296 9064-F11-04) insuring said automobile, and providing indemnity benefit to Justin incase of a covered loss.  A copy of said policy is attached hereto.

8.    At the time the policy was obtained, Justin Culver sought and obtained what he believed to be "full coverage" insurance.  He understood that the policy issued to him provided, among other coverage, Medical Payments Coverage and Total Disability Coverage, commonly referred to as no fault coverage or PIP coverage.

9.    The insured, Justin Culver, paid all premiums on said policy as same became due, and said policy was in full force and effect on July 06, 2016, when Justin Culver, while operating said automobile was involved in a serious automobile accident in Marianna, Lee County, Arkansas.  The accident in Lee County, Arkansas, resulted in a lawsuit for personal injuries filed in Lee County, Arkansas, Circuit Court .

10.    As a result of said accident, Justin Culver incurred medical bills in excess of $5,000.00.  At the time of the accident, Justin Culver was gainfully employed and earning in excess of $140.00 per week, however, as a result of the accident, he was unable to work i.e. totally disabled under the terms of the policy, for a period of six and one-half (6 ½) weeks.

11.    Following the accident on July 6, 2016, Justin went to the State Farm agency office where he had obtained the subject policy to report the accident.  At that time, he was

instructed to sign certain documents pertaining to the insurance loss. He did as he was instructed by the State Farm agency employee and signed the document. He did not realize, and, more importantly, was not advised by the State Farm agency employee, that the document he signed was a rejection of Medical Payments and Total Disability coverages, commonly referred to as no fault coverage or PIP coverage.

12.   After he missed work due to his injuries and after he incurred medical bills for the treatment for the injuries he received in the aforementioned accident, Justin Culver sought payment from State Farm for the benefits he believed he had under his policy. At that time, he was advised by State Farm that his policy did not provide PIP Coverage benefits.

13.   The plaintiff, Justin Culver, has individually, and through counsel, requested information regarding the policy and premium payments, but complete information has not been forth coming.

14.   The defendant, State Farm, has failed and refused to pay to Justin Culver the medical benefits and wage loss/total disability benefits he is due under to policy.

## BREACH OF CONTRACT

15.   The averments contained in paragraphs 1 through 14 above are hereby incorporated by reference.

16.   The plaintiff, Justin Culver, and the defendant, State Farm, entered into a contract. Said contract was intended by Justin Culver to provided coverage for Medical Payments Coverage and Total Disability Coverage, commonly referred to as no fault coverage or PIP coverage.

17.   That pursuant to A.C.A.§ 23-89-202, every automobile liability insurance policy

covering any private passenger motor vehicle issued or delivered in the State of Arkansas, unless

rejected in writing at the time the policy is issued, shall provide minimum medical and hospital

benefits, income disability, and accidental death benefits to the named insured.

18.    That A.C.A.§ 23-89-202, provides:

Required first party coverage.

Every automobile liability insurance policy covering any private passenger motor vehicle
issued or delivered in this state shall provide minimum medical and hospital benefits,
income disability, and accidental death benefits under policy provisions and on forms
approved by the Insurance Commissioner to the named insured and members of his or her
family residing in the same household injured in a motor vehicle accident, to passengers
injured while occupying the insured motor vehicle, and to persons other than those
occupying another vehicle struck by the insured motor vehicle, without regard to fault, as
follows:

(1)    Medical and Hospital Benefits. All reasonable and necessary expenses for
medical, hospital, nursing, dental, surgical, ambulance, funeral expenses, and
prosthetic services incurred within twenty-four (24) months after the automobile
accident, up to an aggregate of five thousand dollars ($5,000) per person, and may
include any nonmedical remedial care and treatment rendered in accordance with
a recognized religious method of healing. Expenses for hospital room charges may
be limited to semiprivate accommodations;

(2)    Income Disability Benefits. Seventy percent (70%) of the loss of income from
work during a period commencing eight (8) days after the date of the accident, and
not to exceed fifty-two (52) weeks, but subject to a maximum of one hundred
forty dollars ($140) per week. In the case of a nonincome earner, the benefits shall
consist of expenses not to exceed seventy dollars ($70.00) per week, or any
fractional part of a week, which are reasonably incurred for essential services in
lieu of those the injured person would have performed without income during a
period commencing eight (8) days after the date of the accident and not to exceed
fifty-two (52) weeks; and

(3)    Accidental Death Benefits. The sum of five thousand dollars ($5,000), to be paid
to the personal representative of the insured, should injury, sickness, or disease
resulting from an automobile accident cause death within one (1) year from the
date of the accident.

19.    The defendant, State Farm, has failed and refused to pay to Justin Culver the

medical benefits and wage loss/total disability benefits he is due under to policy.

20.     That State Farm is indebted to the plaintiff, Justin Culver, in the amount of $5,000.00, being the Medical Payments Coverage under the subject policy.  Further, State Farm, is indebted to the plaintiff in the amount of $700.00, being the Total Disability Coverage benefits due to him under the subject policy.

21.     In addition to the aforesaid amounts, the plaintiff is entitled to twelve percent (12%) thereon as damages, together with a reasonable attorney's fee for the prosecution and collection of indebtedness, as provided in A.C.A.§23-79-208.

## BAD FAITH

22.     The averments contained in paragraphs 1 through 21 above are hereby incorporated by reference.

23.     As a result of the actions of the State Farm agency employee of instructing the plaintiff, Justin Culver, to sign a rejection form rejecting for the no fault coverage, Justin Culver has sustained damages.

24.     That the State Farm Agency employee's actions of instructing the plaintiff, Justin Culver, to sign a rejection form rejecting for the no fault coverage was a bad faith attempt to avoid liability under the subject policy.

25.     The actions of the employee of the State Farm Agency of instructing the plaintiff, Justin Culver, to sign a rejection form rejecting the no fault coverage benefits was an affirmative act designed to avoid coverage under the policy.  It was an affirmative act of misconduct by the insurer, that is dishonest, malicious, or oppressive in an attempt to avoid liability under the policy.

26.     State Farm was guilty of bad faith in the handling of the claim and placed it's

interest ahead of the interest of Justin Culver and, through the acts described above, acted in a manner such hat it's conduct would naturally and probably result in damage to the plaintiff and it continued such conduct in reckless disregard of the consequences from which malice may be inferred.

27.     That actions of the State Farm agency employee described above proximately caused damage to Justin Culver.

## IMPUTATION OF ACTIONS AND BAD FAITH ACTS

28.     All of the averments contained in paragraphs 1 through 27 above are hereby incorporated by reference.

29.     All of the actions and inactions described in the previous paragraphs were committed by agents, employees and/or servants of State Farm who were acting within the course and scope of their employment and/or agency relationship with State Farm. Any and all such acts of the agents, employees and/or servants of the defendant, State Farm, are imputed to State Farm as a matter of Arkansas law.

## COMPENSATORY DAMAGES

30.     The averments contained in paragraphs 1 through 29 above are hereby incorporated by reference.

31.     As a result of the breach of contract State Farm, as heretofore described, Justin Culver is entitled to compensatory damages in the amount of $5,700.00.

## PENALTY AND ATTORNEY FEES

32.     The averments contained in paragraphs 1 through 31 above are hereby incorporated by reference.

33.    In addition to the aforesaid amounts, the plaintiff is entitled to twelve percent (12%) thereon as damages, together with a reasonable attorney's fee for the prosecution and collection of indebtedness, as provided in A.C.A.§23-79-208.

34.    Plaintiff is entitled to pre-judgment interest on the compensatory damages.

### PUNITIVE DAMAGES

35.    The averments contained in paragraphs 1 through 34 above are hereby incorporated by reference.

36.    As a result of the wilful and malicious actions on the part of State Farm, as heretofore described, Plaintiff, Justin Culver, is entitled to punitive damages against State Farm.

### JURY REQUEST AND PRAYER

37.    The plaintiff demands a trial by jury.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, Justin Culver prays:

1.    That he be awarded a judgment against State Farm for compensatory damages in the sum of $5,700.00.

2.    For twelve percent (12%) thereon as damages, together with a reasonable attorney's fee for the prosecution and collection of indebtedness, as provided in A.C.A.§23-79-208

3.    Prejudgment interest;

4.    Punitive damages in an amount to be determined by the jury, but which amount is in excess of the minium amount required for Federal Court Jurisdiction in Diversity of Citizenship cases;

5.    For his costs and attorney's fees; and,

 **StateFarm**

## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 296 9064-F11-04 including any endorsements, if applicable, for the policy term(s) JUN 11 2016 TO JUL 20 2016 and insuring JUSTIN CULVER based on available records.

The policy was in effect on the loss date of July 6, 2016.

Jason Sawyer
Underwriter
Date:     04/09/2018

2000  143551  200  03-21-2012

**State Farm Mutual Automobile Insurance Company**

4700 S Providence Rd
Columbia MO  65217

20895-1-A                    MUTL  VOL

## DECLARATIONS PAGE

**PAGE 1 OF 2**

NAMED INSURED
AT2                              04-1679-1  A      A
        000855  0038
CULVER, JUSTIN
739 SFC 328
FORREST CITY AR   72335-7462

POLICY NUMBER  296 9064-F11-04

POLICY PERIOD JUN 11 2016 to DEC 11 2016
12:01 A.M. Standard Time

STATE FARM PAYMENT PLAN NUMBER
1232568322

AGENT

CEDRIC WILLIAMS INS AGENCY INC
1022 N WASHINGTON ST
FORREST CITY, AR 72335-2857

PHONE: (870)633-3969

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

**YOUR CAR**

| 2015 | BUICK | REGAL | 4DR | 2G4GN5EXXF9194551 | 9000641000 |
|------|-------|-------|-----|-------------------|------------|

| | Bodily Injury Limits | | |
|---|---|---|---|
| | $25,000 | $50,000 | |
| | Each Accident | | |
| D | Comprehensive Coverage - $1,000 Deductible | | $223.01 |
| H | Emergency Road Service Coverage | | $3.00 |
| | Limit - Car Rental Expense | | |
| | 80% | $1,000 | |
| | Bodily Injury Limits | | |
| | $25,000 | $50,000 | |
| | Property Damage Limit | | |
| | $25,000 | | |
| | Bodily Injury Limits | | |
| | $25,000 | $50,000 | |

Arkansas law requires that insurers notify an authorized law enforcement agency if there is a reason to believe that
a fire loss may be other than accidental.   The law requires also that any authorized agency may demand that an insurer provide
information relating to a questionable fire loss.    An insurer releasing such information shall inform its insured no later than
ninety days after the release of the report.    A copy of the report shall be furnished to the insured in the event of civil action
or criminal prosecution.

New Policy Form

State Farm works hard to offer you the best combination of price, service, and protection.    The amount you pay for automobile
insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your
car is used, who drives the car, and information from consumer reports.

You have the right to request, no more than once during a 12-month period, that your policy be re-rated using
a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

CONTINUED

See Reverse Side

01190 /00589
155-3068 2 04 2005 (b1a025ad)
1151XQN    (o1a025ad)

**State Farm Mutual Automobile Insurance Company**

*4700 S Providence Rd*
*Columbia MO 65217*

20895-1-A          MUTL   VOL

| **DECLARATIONS PAGE** |
|---|

PAGE 2 OF 2

NAMED INSURED   000650  0050      04-1679-1  A      A
CULVER, JUSTIN
739 SFC 328
FORREST CITY AR   72335-7462

POLICY NUMBER    296 9064-F11-04

POLICY PERIOD JUN 11 2016 to DEC 11 2016
12:01 A.M. Standard Time

STATE FARM PAYMENT PLAN NUMBER
1232568322

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9804A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
CREDITOR- ALLY FINANCIAL, PO BOX 8101, COCKEYSVILLE MO 21030-8101.
6904A.2   AMENDATORY ENDORSEMENT.

Agent:      CEDRIC WILLIAMS INS AGENCY INC

Telephone: (870)633-3969

Prepared     JUN 14 2016      1679-BAF

01191 /00589
155-3008.2 D4-3006 (o1a025eo)
  (08.X0   (o1a025vd)                    (o1a025d4c)



Please read the policy carefully. If there is an
accident, contact your State Farm agent or one
of our Claim Offices at once. (See "INSURED'S
DUTIES" in this policy booklet.)

State Farm®
**Car Policy**
Booklet

**Arkansas**
Policy Form 9804A

# CONTENTS

THIS POLICY .................................... 3

DEFINITIONS.................................... 4

LIABILITY COVERAGE .................... 5

    Additional Definition ........................... 5
    Insuring Agreement............................. 6
    Supplementary Payments..................... 6
    Limits................................................. 6
    Nonduplication .................................. 7
    Exclusions......................................... 7
    If Other Liability Coverage Applies ........ 8
    Required Out-of-State Liability Coverage ... 9
    Financial Responsibility Certification ....... 9

MEDICAL PAYMENTS COVERAGE,
DEATH, DISMEMBERMENT AND
LOSS OF SIGHT COVERAGE, AND
TOTAL DISABILITY COVERAGE ......... 9

    Additional Definitions ......................... 9
    Insuring Agreements.......................... 10
    Determining Medical Expenses –
    Medical Payments Coverage ...............11
    Limits...............................................11
    Payment of Any Amount Due –
    Total Disability Coverage
    Nonduplication ................................. 12
    Exclusions....................................... 12
    If Other Medical Payments Coverage,
    Total Disability Coverage or
    Similar Vehicle Insurance Applies .......... 13
    Our Payment Options ....................... 14

UNINSURED MOTOR VEHICLE
COVERAGE — BODILY INJURY ....... 14

    Additional Definitions ....................... 14
    Insuring Agreement .......................... 15
    Consent to Settlement ....................... 15
    Deciding Fault and Amount................. 15
    Limits.............................................. 15
    Nonduplication ................................. 15
    Exclusions ....................................... 16
    If Other Uninsured Motor Vehicle Coverage
    Applies ........................................... 16
    Our Payment Options ....................... 17

UNINSURED MOTOR VEHICLE
COVERAGE — PROPERTY DAMAGE.......... 17

    Additional Definitions ....................... 17
    Insuring Agreement .......................... 18
    Consent to Settlement....................... 18
    Deciding Fault and Amount ............... 18
    Limits ............................................. 18
    Nonduplication ................................ 19
    Exclusions ....................................... 19
    If Other Uninsured Motor Vehicle Coverage
    Applies............................................ 19
    Our Payment Options ....................... 19

UNDERINSURED MOTOR VEHICLE
COVERAGE ..................................... 19

    Additional Definitions........................ 19
    Insuring Agreement .......................... 20
    Tentative Agreement to Settle ........... 20
    Deciding Fault and Amount ............... 20
    Limits ............................................. 21
    Nonduplication ................................ 21
    Exclusions ....................................... 21
    If Other Underinsured Motor Vehicle
    Coverage Applies ............................. 22
    Our Payment Options ....................... 23

PHYSICAL DAMAGE COVERAGES ....... 23

    Additional Definitions........................ 23
    Insuring Agreements ......................... 24
    Supplementary Payments – Comprehensive
    Coverage and Collision Coverage.......... 25
    Limits and Loss Settlement – Comprehensive
    Coverage and Collision Coverage ........ 25
    Limits – Car Rental and Travel Expenses
    Coverage ........................................ 26
    Nonduplication ................................ 26
    Exclusions ....................................... 27
    If Other Physical Damage Coverage or Similar
    Coverage Applies.............................. 28
    Financed Vehicle .............................. 28
    Our Payment Options ....................... 29

**INSURED'S DUTIES** .......................................... 29

Notice to Us of an Accident or Loss ................. 29

Notice to Us of a Claim or Lawsuit ................... 29

Insured's Duty to Cooperate With Us .............. 29

Questioning Under Oath ................................... 29

Other Duties Under the Physical
Damage Coverages ............................................ 30

Other Duties Under Medical Payments
Coverage, Death, Dismemberment and
Loss of Sight Coverage, Total Disability
Coverage, Uninsured Motor Vehicle Coverage,
and Underinsured Motor Vehicle Coverage ..... 30

**GENERAL TERMS** ............................................ 31

When Coverage Applies .................................... 31

Where Coverage Applies .................................. 31

Newly Owned or Newly Leased Car ............... 31

Changes to This Policy ..................................... 31

Premium ............................................................ 32

Renewal ............................................................ 32

Nonrenewal ...................................................... 32

Cancellation ...................................................... 32

Assignment ....................................................... 33

Bankruptcy or Insolvency of the Insured ......... 33

Concealment or Fraud ...................................... 33

Our Right to Recover Our Payments ................ 33

Legal Action Against Us ................................... 33

Conformed to Statute ........................................ 34

Choice of Law .................................................. 34

Severability ....................................................... 34

## THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds and applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in EXCEPTIONS, POLICY BOOKLET, AND ENDORSE-MENTS on the Declarations Page, in reliance on the following statements:

   (1) The named insured is the sole owner of *your car*.

   (2) Neither *you* nor any member of *your* household has, within the past three years, had:

      (a) vehicle insurance canceled or nonrenewed by an insurer; or

      (b) either:

         (i) a license to drive; or

         (ii) a vehicle registration

         suspended, revoked, or refused.

   (3) *Your car* is used for pleasure and business.

4. All named insureds and applicants agree by acceptance of this policy that:

   a. the statements in 3.b. above are made by the named insured or applicant and are true; and

   b. *we* provide this insurance on the basis those statements are true.

# DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in boldface italics.

***BodilyInj ury*** means bodily injury to a ***person*** and sickness, disease, or death that results from it.

***Car*** means a land motor vehicle with four or more wheels, designed for use primarily on public roads. It does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

***Car Bus iness*** means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

***Fungi*** means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

    a. Mycotoxins;

    b. Spores;

    c. Scents; or

    d. Byproducts.

***NewlyAc quired Car*** means a *car* newly *ownedby you*. A *car* ceases to be a ***newlyacquir edcar*** on the earlier of:

1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes the *car* as an insured vehicle; or

2. the end of the 20th calendar day immediately following the date the *car* is delivered to *you*.

If a ***newlyacquir edcar*** is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that ***newly acquir ed car*** , subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the ***newlyacquir edcar*** is delivered to *you*.

***Non-OwnedCa r*** means a *car* that is in the lawful possession of *you* or any ***residentr elative*** and that neither:

1. is *ownedby* :

    a. *you*;

    b. any *residentr elative*;

    c. any other ***person*** who resides primarily in *your* household; or

    d. an employer of any ***person*** described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:

    a. *you* ; or

    b. any *residentr elative*

    during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

***Occupying*** means in, on, entering, or exiting.

***Our*** means the Company issuing this policy as shown on the Declarations Page.

***OwnedBy*** means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days.

***Pedestrian*** means a ***person*** who is not *occupying*:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

***Person*** means a human being.

***PrivatePas sengerC ar*** means:

1. a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry ***persons*** and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

    a. that is not used for:

        (1) wholesale; or

        (2) retail

        pick up or delivery; and

    b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

***ResidentR elative*** means a *pe rson*, other than *you*, who resides primarily with the first ***person*** shown as a named insured on the Declarations Page and who is:

1.  related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2.  a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

*State F arm C ompanies* means one or more of the following:

1.  State Farm Mutual Automobile Insurance Company;

2.  State Farm Fire and Casualty Company; and

3.  Any of their affiliates.

*Temporary Substitute Car* means a *car* that is in the lawful possession of the*p erson* operating it and that:

1.  replaces*your car* for a short time while *your car* is out of use due to its:

    a.  breakdown;

    b.  repair;

    c.  servicing;

    d.  damage; or

    e.  theft; and

2.  neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned ca r* and a *temporary s ubstitute car* , then it is considered a *temporary sub stitut eca r* only.

*Trailer* means:

1.  only those trailers:

    a.  designed to be pulled by a *private passen-gercar* ;

    b.  not designed to carry *persons*; and

    c.  while not used as premises for office, store, or display purposes; or

2.  a farm implement or farm wagon while being pulled on public roads by a *car*.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person*, then "*you*" or "*your*" includes the spouse of the first *person* shown as a named insured if the spouse resides primarily with that named insured.

*YourC ar* means the vehicle shown under YOUR CAR on the Declarations Page. *YourC ar* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under YOUR CAR, and *you* ask *us* to replace it with a *car* newly *ownedby you*, then the *car* being replaced will continue to be considered *yourc ar* until the earliest of:

1.  the end of the 30th calendar day immediately following the date the *car* newly *ownedbyyou* is delivered to *you*;

2.  the date this policy is no longer in force; or

3.  the date *you* no longer own or lease the *car* being replaced.


## LIABILITY COVERAGE

This policy provides Liability Coverage if "A" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means:

1.  *you* and *residen tre latives* for:

    a.  the ownership, maintenance, or use of:

        (1)  *yourcar* ;

        (2)  a *newly acquir edcar* ; or

        (3)  a *trailer*; and

    b.  the maintenance or use of:

        (1)  a *non-owned ca r*, or

        (2)  a *temporary sub stitut eca r*;

2.  the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a *car* that is *ownedby* , or furnished by an employer to, a *person* who resides primarily in *your* household, but only if such *car* is neither *ownedby* , nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

5
9804A

3. any other *person* for his or her use of:

   a. *your* *car* ;

   b. a *newly* *acquir* *ed* *car* ;

   c. a *temporary* *sub* *stitute* *car*, or

   d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used within the scope of *your* consent; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned* *by* , nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

**Insuring Agreement**

1. *We* will pay:

   a. damages an *insured* becomes legally liable to pay because of:

     (1) *bodily* *injury* to others; and

     (2) damage to property

   caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy;

   b. attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages; and

   c. court costs charged to an *insured* and resulting from that part of a lawsuit:

     (1) that seeks damages payable under this policy's Liability Coverage; and

     (2) against which *we* defend an *insured* with attorneys chosen by *us*.

We have no duty to pay attorney fees and court costs incurred after *we* deposit in court or pay the amount due under this policy's Liability Coverage.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision

for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages, fees, and costs described in the **Insuring Agreement** above,

the interest, premiums, costs, and expenses listed below that result from such accident:

1. Interest on damages owed by the *insured* that accrues:

   a. before a judgment, where owed by law, but only on that part of the judgment *we* pay; and

   b. after a judgment. *We* will not pay interest on damages paid or payable by a party other than the *insured* or *us*.

*We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage;

2. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for bonds that exceed this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and

3. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

     (1) an arbitration;

     (2) a mediation; or

     (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for *bodily* *injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily* *injury* to any one *person* injured in any one accident, including all damages sustained by other *persons* as a result of that *bodily* *inju* *ry*. The limit shown under "Each Accident" is the most *we* will

pay, subject to the limit for "Each Person", for all damages resulting from *bodily inju ry* to two or more *persons* injured in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage that have already been paid under Medical Payments Coverage, Death, Dismemberment and Loss of Sight Coverage, Total Disability Coverage, Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage of any policy, other than this policy, issued by the *State F arm Companies* to *you* or any *residentre lative*.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR *BODILYINJ URY* TO:

   a. *YOU*;

   b. *RESIDENT RELATIVES*; AND

   c. ANY OTHER *PERSON* WHO BOTH RESIDES PRIMARILY WITH AN *INSURED* AND WHO:

      (1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR

      (2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

4. FOR *BODILYINJURY* TO THAT *INSURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household employee who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR *BODILY INJ URY* TO THAT *INSURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to *you* and *residentrela tives* who are legally liable for *bodily injury* to fellow employees;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

7. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passengercar* on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

   a. *you*; or

   b. any *residentr elative*

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer*;

9. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOURC AR*, A *NEWLY ACQUIRED CAR* , A *TEMPORARYSU BSTITUTECAR* , OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CARBU SINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *privatepass engerca r*;

11. FOR DAMAGE TO PROPERTY WHILE IT IS:

    a. *OWNEDBY* ;

    b. RENTED TO;

    c. USED BY;

    d. IN THE CARE OF; OR

    e. TRANSPORTED BY

    *YOU*, A *RESIDENT RE LATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to either damage to a residence while rented to or leased to an *insured* or damage to a private garage while rented to or leased to an *insured*;

12. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

7

9804A

13. FOR ANY ORDER OF RESTITUTION IS-SUED BY A COURT IN A CRIMINAL PRO-CEEDING OR EQUITABLE ACTION;

14. WHILE USING A *TRAILER* WITH A MO-TOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

15. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

    a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CON-TEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIV-ING; OR

16. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other Car Policies issued to *you* or any *resident relative* by one or more of the *State Farm Companies* apply to the same accident, then:

    a. the Liability Coverage limits of such poli-cies will not be added together to deter-mine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the sin-gle highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* at-tached to it. The Liability Coverage provided by this policy also applies as primary coverage, up to the limits required by the Motor Vehicle Safety Responsibility Act, for the maintenance or use of a *car* loaned to *you* by a legally li-censed automobile dealer as a *temporary sub-stitute car* or as a demonstrator vehicle if the *car* is being maintained or used by *you* or a *resident relative*.

a. If:

   (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as primary coverage; and

   (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as pri-mary coverage for the same accident,

   then *we* will pay the proportion of dam-ages payable as primary that *our* applica-ble limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

b. If:

   (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Li-ability Coverage which applies to the accident as primary coverage; and

   (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as pri-mary coverage for the same accident,

   then the *State Farm Companies* will pay the proportion of damages payable as pri-mary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other li-ability coverage that apply as primary cov-erage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

   (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as excess coverage; and

   (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as ex-cess coverage for the same accident,

   then *we* will pay the proportion of dam-ages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

b.  If:

(1) more than one Car Policy issued to *you* or any *resident relative* by the *State F arm C ompanies* provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than the *State Farm Com panies* also applies as excess coverage for the same accident,

then the *StateFa rm Companies* will pay the proportion of damages payable  as excess that the maximum amount that may be paid by the *StateFa rm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

**Required Out-of-State Liability Coverage**

If:

1.  an *insured* is in another state of the United States of America, a territory or possession of

the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2.  this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

**Financial Responsibility Certification**

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

---

# MEDICAL PAYMENTS COVERAGE,
## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE, AND
### TOTAL DISABILITY COVERAGE

This policy provides:

1.  Medical Payments Coverage if "C" is shown under "SYMBOLS" on the Declarations Page;

2.  Death, Dismemberment and Loss of Sight Coverage if "S1" or "S2" is shown under "SYMBOLS" on the Declarations Page.  "S" with a number beside it on the Declarations Page is *your* coverage symbol.

3.  Total Disability Coverage if "T1", "T2" or "T3" is shown under "SYMBOLS" on the Declarations Page.  "T" with a number beside it on the Declarations Page is *your* coverage symbol.

**Additional Definitions**

*IncomePr oducer* means a *person* who, at the time of the accident, was receiving salary, wages, tips, commissions, fees or other earnings from work or employment.

*Insured* means:

1.  *you* and *residentre latives*:

2.  any other *person* who is not provided other similar coverage as a named insured or an additional insured under another valid and collectible automobile insurance policy while:

a.  *occupying*:

(1) *yourcar* ;

(2) a *newlyacquir edcar* ;

(3) a *temporarysub stituteca r*; or

(4) a *trailer* while attached to a *car* described in (1), (2), or (3) above.

Such vehicle must be used by a *person* who is an *insured* under Liability Coverage.

b.  *occupying* a *car* loaned to *you* by a legally licensed automobile dealer for use as a demonstrator vehicle.  The vehicle must be operated by *you.*

c.  that *person* is either not *occupying* a self-propelled vehicle, or is *occupying* a motorcycle, if *yourcar* , a *newlyacquir ed car* or a *temporarysub stituteca r*:

(1) strikes such *person*; and

(2) is driven by a *person* who is an *insured* under Liability Coverage of this policy.

*MedicalE xpenses* mean *reasonableexpen ses* for *medicals ervices.*

9

*Medical Ser vices* mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the *bodilyinjur y*;

2. rendered by a healthcare provider:

   a. who is licensed as a healthcare provider if a license is required by law; and

   b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the *bodilyinj ury*;

4. primarily designed to serve a medical purpose;

5. nonmedical remedial treatments provided in accordance with a recognized religious method of healing;

6. not experimental; and

7. not for research purposes.

*ReasonableE xpenses* mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar *medicals ervices* in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:

   a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where *medicals ervices* are provided; and

   b. as prescribed or authorized by the law of the state where *medicals ervices* are provided;

3. The fees agreed to by both the *insured's* healthcare provider and *us*; or

4. The fees agreed upon between the *insured's* healthcare provider and a third party when *we* have a contract with such third party.

*TotalDisa bility* means any disability that continuously keeps the *insured* from doing any and every duty that pertains to his or her occupation.

*WeeklyInd emnity* means, if the *insured* is:

1. an *incomepr oducer*, the lower of:

   a. 70% of the loss of salary, wages, tips, commissions, fees and other earnings from work or employment; or

   b. the weekly amount shown in the Total Disability Coverage schedule that is applicable to *your* coverage symbol.

2. not an *incomepr oducer*, the amount payable up to a maximum of $70 per week or pro-rata for a partial week, for reasonable expenses incurred for needed services that would have been performed by the *insured*:

   a. in the absence of the *bodilyinju ry* sustained by that *insured*;

   b. for the benefit of the *insured* or the family of the *insured*; and

   c. without pay.

**Insuring Agreements**

1. **Medical Payments Coverage**

   *We* will pay:

   a. *medicalexpen ses* incurred because of *bodilyinj ury* that is sustained by an *insured* and caused by a land motor vehicle accident. *We* will only pay such *medicalexpenses* for *m edical se rvices* provided within two years immediately following the date of the accident; and

   b. funeral expenses incurred for an *insured* who dies within two years immediately following the date of a motor vehicle accident if the death is a direct result of *bodily injury* sustained in such accident.

2. **Death, Dismemberment and Loss of Sight Coverage**

   *We* will pay the highest benefit applicable to both *your* coverage symbol and the death or loss shown in the Death, Dismemberment and Loss of Sight Coverage Schedule if an *insured*:

   a. dies; or

   b. suffers dismemberment or permanent loss of sight, as described in the schedule

   and the death or loss is caused by a land motor vehicle accident.

   The *insured* must beoccupyi ng or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident.

   The dismemberment or permanent loss of sight must occur within 90 days immediately following the date of the accident. Death must occur within one year immediately following the date of the accident. If the death occurs within 24 hours after the accident, *we* will only pay the amount that applies to death.

3. **Total Disability Coverage**

   *We* will pay *weeklyi ndemnity* for *totald isability* to an *insured*. The *totald isability* must result from *bodilyinjury* caused by a land motor

vehicle accident. *Weekly indemnity* begins on the 8th day immediately following the date of the accident.

**Determining Medical Expenses – Medical Payments Coverage**

*We* have the right to:

1. obtain and use:

   a. utilization reviews;

   b. peer reviews; and

   c. medical bill reviews

   to determine if the incurred charges are *medical expenses*;

2. use a medical examination of the *insured* to determine if:

   a. the *bodily injury* was caused by a motor vehicle accident; and

   b. the expenses incurred are *medical expenses*; and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

**Limits**

1. **Medical Payments Coverage**

   The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

   a. *insureds*;

   b. claims made;

   c. vehicles insured; or

   d. vehicles involved in the accident.

   Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $5,000.

2. **Death, Dismemberment and Loss of Sight Coverage**

   a. The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident.

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE SCHEDULE**

*We* will pay the benefit in this schedule for death or for the described dismemberment or permanent loss of sight that is applicable to *your* coverage symbol.

| Coverage Symbol | S1 | S2 |
|---|---|---|
| Death | $5,000 | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand & one foot; or one hand or one foot & all sight of one eye | $5,000 | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 | $5,000 |
| Loss of the thumb & a finger on one hand; or any three fingers | $1,500 | $3,000 |
| Loss of any two fingers | $1,000 | $2,000 |

The hand must be cut off through or above the wrist. The foot must be cut off through or above the ankle. The whole thumb or finger must be cut off.

   b. The benefits shown in the schedule are doubled for an *insured* who, at the time of the accident, was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

3. **Total Disability Coverage**

   a. The benefit applicable to *your* coverage symbol shown in the Total Disability Coverage schedule is the most *we* will pay for any one *insured* in any one accident.

**TOTAL DISABILITY COVERAGE SCHEDULE**

| Coverage Symbol | T1 | T2 | T3 |
|---|---|---|---|
| Weekly amount if *insured* is an *income producer* | $140 | $250 | $500 |
| Weekly amount if *insured* is not an *income producer* | $ 70 | $ 70 | $ 70 |
| Period of Time (in weeks) | 52 | 104 | 104 |

   b. *Weekly indemnity* ends on the earliest of:

   (1) the death of the *insured*;

   (2) when *we* have made payments for the period of time shown in the schedule for *your* coverage symbol;

   (3) when an *insured* who is an *income producer* is again able to engage in gainful activity; or

   (4) when an *insured* who is not an *income producer* is again able to perform the needed services.

11

9804A

**Payment of Any Amount Due – Total Disability Coverage**

Payments will be made on a monthly basis within 30 days after we receive proof of:

1.  continued *total tsability*; and

2.  the amount due.

**Nonduplication**

**Medical Payments Coverage and Total Disability Coverage**

*We* will not pay any *medicalexpen ses*, funeral expenses or *weeklyind emnity* that has already been paid:

1.  as damages under Liability Coverage, Uninsured Motor Vehicle Coverage, or Underinsured Motor Vehicle Coverage of any policy, other than this policy, issued by the *StateF arm Companies* to *you* or any *residentr elative*; or

2.  by or on behalf of a party who is legally liable for the *in sured's b odilyinjury* .

**Exclusions**

1.  **Medical Payments Coverage**

    THERE IS NO COVERAGE FOR AN *IN-SURED* WHO IS STRUCK AS A *PEDES-TRIAN* BY A MOTOR VEHICLE, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOURC AR* OR A *NEWLYA CQUIRED CAR*.

2.  **Medical Payments Coverage, Death, Dismemberment and Loss of Sight Coverage and Total Disability Coverage**

    THERE IS NO COVERAGE FOR AN *IN-SURED*:

    a.  IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY IN-JURY*;

    b.  WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

    c.  WHO IS *OCCUPYING* A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to:

        (1) the use of a *privatepas sengercar* on a share-the-expense basis; or

        (2) an *insured* while *occupying* a *non-ownedcar* as a passenger;

    d.  WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CARBU SINESS*. This exclusion does not apply to:

        (1) *you*; or

        (2) any *residentr elative*

        while maintaining or using *your car* , a *newlyacquir edcar* , a *temporarys ubsti-tuteca r*, or a *trailer*;

    e.  WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

    f.  WHILE MAINTAINING OR USING A *NON-OWNEDC AR* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CARB USINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *privatepas sengercar* ;

    g.  WHO IS EITHER *OCCUPYING* OR STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

    h.  WHO IS STRUCK AS A *PEDESTRIAN* BY A VEHICLE THAT:

        (1) IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

        (2) RUNS ON RAILS OR CRAWLER-TREADS;

    i.  WHOSE *BODILY INJ URY* RESULTS FROM WAR OF ANY KIND;

    j.  WHOSE *BODILY INJ URY* RESULTS FROM:

        (1) NUCLEAR REACTION;

        (2) RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

        (3) THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

    k.  WHOSE *BODILY INJ URY* RESULTS FROM THE DISCHARGE OF A FIRE-ARM;

l.   WHOSE *BODILY INJURY* RESULTS FROM EXPOSURE TO *FUNGI*; OR

m.   WHO IS *OCCUPYING* A VEHICLE WHILE IT IS:

   (1)  BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST;

   (2)  ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING; OR

n.   WHOSE CONDUCT CONTRIBUTED TO HIS OR HER *BODILY INJURY* WHILE:

   (1)  INTENTIONALLY CAUSING *BODILY INJURY* TO HIMSELF OR HERSELF;

   (2)  COMMITTING A FELONY; OR

   (3)  TRYING TO AVOID LAWFUL APPREHENSION OR ARREST BY A LAW ENFORCEMENT OFFICIAL.

**3.  Death, Dismemberment and Loss of Sight Coverage and Total Disability Coverage**

THERE IS NO COVERAGE FOR AN *INSURED*:

a.   WHILE *OCCUPYING*, LOADING, OR UNLOADING:

   (1)  AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT; OR

   (2)  A VEHICLE, OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:

     (a)  *INSURED'S* BUSINESS; OR

     (b)  COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN THE *INSURED'S* BUSINESS OR JOB.

This exclusion (3.a.2) does not apply if the vehicle is a *private passenger car*.

b.   FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:

   (1)  SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *INSURED* WAS SANE OR INSANE; OR

   (2)  DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

**If Other Medical Payments Coverage, Total Disability Coverage or Similar Vehicle Insurance Applies**

1.   An *insured* shall not recover for the same *medical expenses*, funeral expenses or *weekly indemnity* under both this policy and other similar vehicle insurance.

2.   If coverage is provided for *medical expenses*, funeral expenses or *weekly indemnity* by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by one or more of the *State Farm Companies* and the coverage applies to the same *bodily injury*, then:

a.   the coverage limits of such policies shall not be added together to determine the most that may be paid; and

b.   the maximum amount that may be paid from all such policies combined is the single highest limit of the applicable coverage provided by any one of the policies. *We* may choose one or more policies from which to make payment.

3.   If:

a.   this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides coverage for *medical expenses*, funeral expenses or *weekly indemnity* which applies to the accident; and

b.   other similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies to the same accident,

then *we* will pay the proportion of *medical expenses*, funeral expenses and *weekly indemnity* payable that *our* limit applicable to the coverage that provides the payment bears to the sum of *our* applicable limit and the limits of all other similar vehicle insurance that apply.

4.   If:

a.   more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides coverage for *medical expenses*, funeral expenses or *weekly indemnity* which applies to the accident; and

b.   similar vehicle insurance provided by one or more sources other than the *State Farm Companies* also applies to the same accident,

then the *State Fa rm Companies* will pay the proportion of *medical expe nses*, funeral expenses and *weekly ind emnity* payable that the maximum amount that may be paid by the *State F arm Companies* as determined in 2. above bears to the sum of such amount and the limits of all other similar vehicle insurance that apply.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment; or

5. Any *pers on* or organization that provides the *medical s ervices* or funeral services.

## UNINSURED MOTOR VEHICLE COVERAGE — BODILY INJURY

This policy provides Uninsured Motor Vehicle Coverage – Bodily Injury if "U" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;

2. *residen t re latives*;

3. any other *person* while *occupying*:

    a. *your car* ;

    b. a *newly acquir ed car* ;

    c. a *temporary sub stitute ca r*, or

    d. a *car* loaned to *you* by a legally licensed automobile dealer for use as a demonstrator vehicle. The vehicle must be operated by *you* or a *residen t r elative*.

Such vehicle must be used within the scope of *your* consent. Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Punitive Da mages* means damages imposed to punish a wrongdoer and to deter others from similar conduct.

*Uninsured Mo tor Vehicle* means a land motor vehicle:

1. the ownership, maintenance, and use of which is:

    a. not insured or bonded for bodily injury liability at the time of the accident; or

    b. insured or bonded for bodily injury liability at the time of the accident; but

    (1) the limits are less than required by the financial responsibility act of Arkansas; or

    (2) the insuring company:

        (a) denies that its policy provides liability coverage for compensatory damages that result from the accident; or

        (b) is or becomes insolvent; or

2. the owner and driver of which remain unknown and which causes *bodily injury* to the *insured*. If there is no physical contact between that land motor vehicle and the *insured* or the vehicle the *insured* is *occupying*, then the facts of the accident must be corroborated by a disinterested *person* who witnessed the accident. *You*, *resident relatives*, and *persons occupying* the same vehicle as the *insured* are not disinterested *persons*.

*Uninsured Mo tor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy;

2. *owned by* , rented to, or furnished or available for the regular use of *you* or any *resident relative*;

3. *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4. *owned by* or rented to any government or any of its political subdivisions or agencies;

5. designed for use primarily off public roads except while on public roads; or

6. while located for use as a dwelling or other premises.

14
9804A

## Insuring Agreement

*We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be:

1.  sustained by an *insured*; and

2.  caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle.

## Consent to Settlement

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1.  consent in writing, then the *insured* may accept such settlement offer.

2.  inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

    a.  *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

    b.  any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

## Deciding Fault and Amount

1.  a.  The *insured* and *we* must agree to the answers to the following two questions:

    (1) Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

    (2) If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

    b.  If there is no agreement on the answer to either question in 1.a. above, then the *insured* shall:

    (1) file a lawsuit, in a state or federal court that has jurisdiction, against:

        (a) *us*;

        (b) the owner and driver of the *uninsured motor vehicle* unless *we* have consented to a settlement

offer proposed by or on behalf of such owner or driver; and

    (c) any other party or parties who may be legally liable for the *insured's* damages;

    (2) consent to a jury trial if requested by *us*;

    (3) agree that *we* may contest the issues of liability and the amount of damages; and

    (4) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2.  *We* are not bound by any:

    a.  judgment obtained without *our* written consent; and

    b.  default judgment against any *person* or organization other than *us*.

3.  Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

## Limits

The Uninsured Motor Vehicle Coverage limits for *bodily injury* are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident.

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1.  *insureds*;

2.  claims made;

3.  vehicles insured; or

4.  vehicles involved in the accident.

## Nonduplication

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1.  that have already been paid to or for the *insured*:

    a.  by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

b. for *bodily injury* under Liability Coverage of any policy, other than this policy, issued by the *State Fa rm Companies* to *you* or any *resident relative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

   to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under the medical payments coverage of any other policy or other similar vehicle insurance.

## Exclusions

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY IN-JURY*;

2. FOR AN *INSURED* WHO SUSTAINS *BOD-ILY I NJURY* WHILE *OCCUPYING* A MO-TOR VEHICLE *OWNED B Y YOU* OR ANY *RESIDENT REL ATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY AC QUIRED CAR*.

   This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* a motor vehicle not *owned by* one or both of them;

3. FOR AN *INSURED* WHOSE *BODILY I N-JURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

4. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

   c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5. FOR *PUNITIVE DA MAGES* OR EXEM-PLARY DAMAGES; OR

6. FOR ANY ORDER OF RESTITUTION IS-SUED BY A COURT IN A CRIMINAL PRO-CEEDING OR EQUITABLE ACTION.

## If Other Uninsured Motor Vehicle Coverage Applies

1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by one or more of the *State F arm Companies* apply to the same *bodily injury*, then:

   a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying you r car*, or while *occupying* a *car* loaned to *you* by a legally licensed automobile dealer for use as a *temporary s ubstitute car* or as a demonstrator vehicle.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Fa rm Co mpanies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Fa rm Co mpanies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Co mpanies* provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Fa rm Co mpanies* also applies as primary coverage for the same accident,

then the *State Fa rm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State F arm C ompanies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

    a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Fa rm Co mpanies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

      (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Fa rm Co mpanies* also applies as excess coverage for the same accident,

    then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

  b. If:

    (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State F arm C ompanies* provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

    (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Fa rm Co mpanies* also applies as excess coverage for the same accident,

  then the *State Fa rm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State F arm C ompanies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

## Our Payment Options

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## UNINSURED MOTOR VEHICLE COVERAGE — PROPERTY DAMAGE

This policy provides Uninsured Motor Vehicle Coverage – Property Damage if "U1" is shown under "SYMBOLS" on the Declarations Page.

### Additional Definitions

*PropertyD amage* means damage to *yourcar* or a *newlyacquir edcar* and a reasonable allowance for loss of use of such *car*.

*UninsuredMo tor Vehicle* means a land motor vehicle:

1. the ownership, maintenance, and use of which is:

    a. not insured or bonded for property damage liability at the time of the accident; or

    b. insured or bonded for property damage liability at the time of the accident; but

    (1) the limit is less than required by the financial responsibility act of Arkansas; or

    (2) the insuring company:

      (a) denies that its policy provides liability coverage for *property damage* that results from the accident; or

      (b) is or becomes insolvent; or

2. the owner and driver of which remain unknown and which causes *propertydamage* . If there is no physical contact between that land motor vehicle and *yourcar* or a *newlyacquir edcar* , then the facts of the accident must be corroborated by a disinterested *person* who witnessed the accident. *You, resident relatives,*

17
9804A

and *persons occupying your car* or a *newly acquiredcar* are not disinterested *persons*.

*UninsuredMo tor Vehicle* does not include a land motor vehicle:

1.  whose ownership, maintenance, or use is provided Liability Coverage by this policy;

2.  *owned by* , rented to, or furnished or available for the regular use of *you* or any *resident relative;*

3.  *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4.  *owned by* or rented to any government or any of its political subdivisions or agencies;

5.  designed for use primarily off public roads except while on public roads; or

6.  while located for use as a dwelling or other premises.

**Insuring Agreement**

*We* will pay damages for *propertydamage you* are legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *propertyda mage* must be caused by an accident that involves the operation, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle.

**Consent to Settlement**

*You* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsuredm otorvehicle* , and *you* must request *our* written consent to accept such settlement offer.

If *we*:

1.  consent in writing, then *you* may accept such settlement offer.

2.  inform *you* in writing that *we* do not consent, then *you* may not accept such settlement offer and:

    a.  *we* will make payment to *you* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsuredm otorvehicle* ; and

    b.  any recovery from or on behalf of the owner or driver of the *uninsured m otor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1.  a.  *You* and *we* must agree to the answers to the following two questions:

    (1)  Are *you* legally entitled to recover damages for *pr operty dama ge* from

the owner or driver of the *uninsured motorvehicle* ?

    (2)  If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the damages that *you* are legally entitled to recover from the owner or driver of the *uninsuredm otorvehicle* ?

    b.  If there is no agreement on the answer to either question in 1.a. above, then *you* shall:

    (1)  file a lawsuit, in a state or federal court that has jurisdiction, against:

        (a)  *us*;

        (b)  the owner and driver of the *uninsured m otor v ehicle* unless *we* have consented to a settlement offer proposed by or on behalf of such owner or driver; and

        (c)  any other party or parties who may be legally liable for the *propertyda mage*;

    (2)  consent to a jury trial if requested by *us*;

    (3)  agree that *we* may contest the issues of liability and the amount of damages; and

    (4)  secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2.  *We* are not bound by any:

    a.  judgment obtained without *our* written consent; and

    b.  default judgment against any *person* or organization other than *us*.

3.  Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**Limits**

The Uninsured Motor Vehicle Coverage limit for *propertyda mage* is shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Property Damage Limit – Each Accident". This limit is the most we will pay for all damages resulting from *propertydamage* in any one accident.

This Uninsured Motor Vehicle Coverage limit is the most *we* will pay regardless of the number of:

18
9804A

1.  claims made;

2.  vehicles insured; or

3.  vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages:

1.  that have already been paid to or for *you* by or on behalf of any *person* or organization who is or may be held legally liable for the *property damage*; or

2.  that have already been paid or are payable under any policy issued by the *State Fa rmCom - panies* or any other company providing property insurance or physical damage coverage.

**Exclusions**

THERE IS NO COVERAGE:

1.  IF SETTLEMENT IS MADE WITHOUT *OUR* WRITTEN CONSENT WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *PROPERTYD AMAGE*;

2.  FOR THE FIRST $200 OF *PROPERTYDAM- AGE* RESULTING FROM ONE ACCIDENT.

This does not apply if:

a.  *your car* or a *newlyacquir ed car* is in- sured for Collision Coverage with *us*; and

b.  the operator of the *uninsuredm otorv ehicle* involved in the accident has been positively identified and is solely at fault.

3.  FOR ANY ORDER OF RESTITUTION IS- SUED BY A COURT IN A CRIMINAL PRO- CEEDING OR EQUITABLE ACTION.

**If Other Uninsured Motor Vehicle Coverage Applies**

If other similar coverage applies to *propertyd am- age*, *we* will pay the proportion of the damages that the maximum amount payable by *us* bears to the sum of such amount and the limits of all other simi- lar coverage that applies.

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1.  *You*;

2.  The repairer of *your car* or a *newlyacqu ired car*; or

3.  A creditor shown on the Declarations Page, to the extent of its interest.

## UNDERINSURED MOTOR VEHICLE COVERAGE

This policy provides Underinsured Motor Vehicle Coverage if "W" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1.  *you*;

2.  *residentre latives*;

3.  any other *person* while *occupying*:

a.  *your car* ;

b.  a *newlyacquir edcar* ;

c.  a *temporarysub stituteca r*, or

d.  a *car* loaned to *you* by a legally licensed automobile dealer for use as a demonstra- tor vehicle. The vehicle must be operated by *you* or a *residentr elative*.

Such vehicle must be used within the scope of *your* consent. Such other *personoccu pying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4.  any *person* entitled to recover compensatory damages as a result of *bodilyinju ry* to an *in- sured* as defined in 1., 2., or 3. above.

*PunitiveDa mages* means damages imposed to pun- ish a wrongdoer and to deter others from similar conduct.

*UnderinsuredMo tor Vehicle* means a land motor vehicle:

1.  the ownership, maintenance, or use of which is either:

a.  insured or bonded for bodily injury liabil- ity at the time of the accident; or

b.  self-insured under any motor vehicle fi- nancial responsibility law, any motor car- rier law, or any similar law; and

2.  for which the total limits of insurance and self- insurance for bodily injury liability from all sources are less than the amount needed to compensate the *insured* for *bodilyinjury* dam- ages.

19

9804A

*Underinsured Mo tor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy;

2. *owned by*, rented to, or furnished or available for the regular use of *you* or any *resident relative*;

3. *owned by* or rented to any government or any of its political subdivisions or agencies;

4. designed for use primarily off public roads except while on public roads;

5. while located for use as a dwelling or other premises; or

6. defined as an *uninsured otor vehicle* under Uninsured Motor Vehicle Coverage of this policy.

**Insuring Agreement**

*We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *underinsured otor vehicle*. The *bodily injury* must be:

1. sustained by an *in sured*; and

2. caused by an accident that involves the operation, maintenance, or use of an *underinsured motor vehicle* as a motor vehicle.

*We* will pay only if the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply to the *insured's bodily injury* have been used up by payment of judgments or settlements, or have been offered to the *insured* in writing.

**Tentative Agreement to Settle**

1. If the *insured* reaches a tentative agreement to settle with the owner or operator of an *underinsured m otor v ehicle* for the liability limits available to such owner or operator, the *insured* may send written notice of such agreement to *us*. The notice must be sent certified mail – return receipt requested, and include:

   a. written documentation of the dollar amount of the loss incurred;

   b. copies of all medical bills;

   c. written authorization or a court order allowing *us* to obtain medical reports from all employers and medical providers;

   d. written confirmation from the liable party's liability insurer of the liability limits and the terms of the tentative agreement to settle. The tentative agreement to settle cannot include any amount representing *punitive damages* or exemplary damages.

2. If *we* pay the *insured* the amount of the tentative agreement to settle within 30 days of *our* receipt of the notice of agreement, then *we* are subrogated to the extent of any payments made under Underinsured Motor Vehicle Coverage.

3. If *we* fail to pay the *insured* the amount of the tentative agreement to settle within 30 days of *our* receipt of the notice of agreement, then:

   a. *we* waive *our* subrogation rights; and

   b. the *insured* may settle with the owner or operator of the *underinsured motor vehicle* without losing the right to make an Underinsured Motor Vehicle Coverage claim under this policy.

4. This Tentative Agreement to Settle provision is waived if *we* provide both:

   a. Liability Coverage for the owner or operator of the *underinsured m otor vehicle*; and

   b. Underinsured Motor Vehicle Coverage for the *insured*.

**Deciding Fault and Amount**

1. a. The *insured* and *we* must agree to the answers to the following two questions:

   (1) Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *underinsured motor vehicle*?

   (2) If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages the *insured* is legally entitled to recover from the owner or driver of the *underinsured motor vehicle*?

   b. If there is no agreement on the answer to either question in 1.a. above, then the *in sured* shall:

   (1) file a lawsuit, in a state or federal court that has jurisdiction, against:

      (a) *us*;

      (b) the owner and driver of the *underinsured m otor vehicle* unless *we* have consented to a settlement offer proposed by or on behalf of such owner or driver; and

      (c) any other party or parties who may be legally liable for the *insured's* damages;

   (2) consent to a jury trial if requested by *us*;

   (3) agree that *we* may contest the issues of liability and the amount of damages; and

   (4) secure a judgment in that action. The judgment must be the final result of an

actual trial and any appeals, if any appeals are taken.

2. *We* are not bound by any:

   a. judgment obtained without *our* written consent if the settlement impairs our right to recover our payments; and

   b. default judgment against any *person* or organization other than *us*.

3. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**Limits**

1. The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

   a. The most *we* will pay for all damages resulting from *bodilyinjury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodilyinjury*, is the lesser of:

      (1) the amount of all damages resulting from that *bodilyinju ry* reduced by the sum of all payments for damages resulting from that *bodilyinj ury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodilyinj ury*; or

      (2) the limit shown under "Each Person".

   b. Subject to a. above, the most *we* will pay for all damages resulting from *bodilyinjury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

2. These Underinsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

   a. *insureds*;

   b. claims made;

   c. vehicles insured; or

   d. vehicles involved in the accident.

**Nonduplication**

*We* will not pay under Underinsured Motor Vehicle Coverage any damages:

1. that have already been paid to or for the *insured*:

   a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

   b. for *bodily injury* under Liability Coverage of any policy, other than this policy, issued by the *State Fa rm Companies* to *you* or any *residentr elative*;

2. that:

   a. have already been paid;

   b. could have been paid; or

   c. could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or

3. that have already been paid as expenses under the medical payments coverage of any other policy or other similar vehicle insurance.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, EXCEPT AS PROVIDED IN THE TENTATIVE AGREEMENT TO SETTLE PROVISION, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILYI N-JURY* AND THEREBY IMPAIRS *OUR* RIGHT TO RECOVER *OUR* PAYMENTS;

2. FOR AN *INSURED* WHO SUSTAINS *BOD-ILYI NJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNEDB Y YOU* OR ANY *RESIDENTREL ATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLYAC QUIRED CAR*.

   This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* a motor vehicle not *owned by* one or both of them;

3. FOR AN *INSURED* WHOSE *BODILYI N-JURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

4. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

   c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5. FOR *PUNITIVE DA MAGES* OR EXEM-PLARY DAMAGES; OR

6. FOR ANY ORDER OF RESTITUTION IS-SUED BY A COURT IN A CRIMINAL PRO-CEEDING OR EQUITABLE ACTION.

**If Other Underinsured Motor Vehicle Coverage Applies**

1. If Underinsured Motor Vehicle Coverage pro-vided by this policy and one or more other ve-hicle policies issued to *you* or any *resident relative* by one or more of the *State F arm Companies* apply to the same *bodilyinj ury*, then:

   a. the Underinsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single high-est applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Underinsured Motor Vehicle Coverage provided by this policy applies as primary cov-erage for an *insured* who sustains *bodily injury* while *occupying your car*, or while *occupying* a *car* loaned to *you* by a legally licensed auto-mobile dealer for use as a *temporarys ubstitute car* or as a demonstrator vehicle.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Fa rm Co mpanies* that provides Underinsured Motor Vehicle Coverage which applies to the accident as pri-mary coverage; and

      (2) underinsured motor vehicle coverage provided by one or more sources other than the *State Fa rm Co mpanies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of dam-ages payable as primary that *our* applica-ble limit bears to the sum of *our* applicable limit and the limits of all other underin-sured motor vehicle coverage that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State F arm C ompanies* provides Un-derinsured Motor Vehicle Coverage which applies to the accident as pri-mary coverage; and

      (2) underinsured motor vehicle coverage provided by one or more sources other than the *State Fa rm Co mpanies* also applies as primary coverage for the same accident,

   then the *State Fa rm Companies* will pay the proportion of damages payable as prima-ry that the maximum amount that may be paid by the *State F arm C ompanies* as determined in 1. above bears to the sum of such amount and the limits of all other un-derinsured motor vehicle coverage that ap-ply as primary coverage.

3. Except as provided in 2. above, the Underin-sured Motor Vehicle Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Fa rm Co mpanies* that provides Underinsured Motor Vehicle Coverage which applies to the accident as ex-cess coverage; and

      (2) underinsured motor vehicle coverage provided by one or more sources other than the *State Fa rm Co mpanies* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of dam-ages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other underin-sured motor vehicle coverage that apply as excess coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident r elative* by the *State F arm C ompanies* provides Un-derinsured Motor Vehicle Coverage which applies to the accident as ex-cess coverage; and

      (2) underinsured motor vehicle coverage provided by one or more sources other than the *State F arm Co mpanies* also applies as excess coverage for the same accident,

   then the *State Fa rm Companies* will pay the proportion of damages payable as ex-cess that the maximum amount that may be paid by the *State F arm C ompanies* as determined in 1. above bears to the sum of such amount and the limits of all other un-derinsured motor vehicle coverage that ap-ply as excess coverage.

22
9804A

**Our Payment Options**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1. *your car* ;

2. a *newly acquired car* ;

3. a *temporary substitute car*;

4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5. a *non-owned car* while it is:

   a. being driven by an *insured*; or

   b. in the custody of an *insured* if at the time of the *loss* it is:

      (1) not being driven; or

      (2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*; and

6. a *non-owned trailer* and a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily rental charge* means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle* . *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or other object; or

2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by* :

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by* :

23
9804A

a.   an *insured*;

b.   any other *person* who resides primarily in *your* household; or

c.   an employer of any *person* described in a. or b. above; nor

2.   has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

**1.   Comprehensive Coverage**

*We* will pay:

a.   for *loss*, except *loss ca usedb yco llislon*, to a *coveredvehicle* ; and

b.   transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newlyacquir edcar* . These transportation expenses are payable:

(1)   during the period that:

(a)   starts on the date *you* report the theft to *us*; and

(b)   ends on the earliest of:

(i)   the date the vehicle is returned to *your* possession in a drivable condition;

(ii)   the date *we* offer to pay *you* for the *loss* if the vehicle has not yet been recovered; or

(iii)   the date *we* offer to pay *you* for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

(2)   during the period that:

(a)   starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

(b)   ends on the date the vehicle is repaired.

These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

**2.   Collision Coverage**

*We* will pay for *loss ca usedb yco llislon* to a *coveredvehicle* .

**3.   Emergency Road Service Coverage**

*We* will pay the fair cost incurred by an *insured* for:

a.   up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

b.   towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

c.   towing a *coveredvehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

d.   delivery of gas, oil, battery, or tire necessary to return a *coveredvehic le* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

e.   up to one hour of labor for locksmith services to unlock a *coveredvehicle* if its key is lost, stolen, or locked inside the vehicle.

**4.   Car Rental and Travel Expenses Coverage**

**a.   Car Rental Expense**

*We* will pay the *daily r entalch arge* incurred when *you* rent a *car* from a *car business* while *your car* or a *newlya c-quiredcar* is:

(1)   not drivable; or

(2)   being repaired

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay the *daily rental charge* incurred during a period that:

(1)   starts on the date:

(a)   the vehicle is not drivable as a result of the *loss*; or

(b)   the vehicle is left at a repair facility if the vehicle is drivable; and

(2)   ends on the earliest of:

(a)   the date the vehicle has been repaired or replaced;

(b)   the date *we* offer to pay *you* for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

(c)   five days after *we* offer to pay *you* for the *loss* if the vehicle is:

(i)   a total loss as determined by *us*; or

(ii)   stolen and not recovered.

The amount of any such *daily r ental charge* incurred by *you* must be reported to *us* before *we* will pay such amount.

**b. Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

    (a) starts after the *loss* occurs; and

    (b) ends on the earlier of:

        (i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

        (ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

**c. Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive deductible or collision deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If Symbol "D" is shown on the Declarations Page and the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage, or if Symbol "G" is shown on the Declarations Page and the *covered vehicle* sustains *loss* for which *we* make a payment under Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

    a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

    b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable.

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

    a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

    b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

    a. Pay the cost to repair the *covered vehicle* minus any applicable deductible.

    (1) *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

        (a) The cost agreed to by both the owner of the *covered vehicle* and *us*;

        (b) A bid or repair estimate approved by *us*; or

        (c) A repair estimate that is written based upon or adjusted to:

            (i) the prevailing competitive price;

            (ii) the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

(iii) a combination of (i) and (ii) above.

The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicl e* to its pre-loss condition.

*You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

IN THE REPAIR OF *YOUR* COVERED MOTOR VEHICLE UNDER THE PHYSICAL DAMAGE COVERAGE PROVISIONS OF THIS POLICY, *WE* MAY REQUIRE OR SPECIFY THE USE OF MOTOR VEHICLE PARTS NOT MADE BY THE ORIGINAL MANUFACTURER. THESE PARTS ARE REQUIRED TO BE AT LEAST EQUAL IN TERMS OF FIT, QUALITY, PERFORMANCE, AND WARRANTY TO THE ORIGINAL MANUFACTURER PARTS THEY REPLACE.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

(2) The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

(3) If the repair or replacement of a part results in betterment of that part, then *we* have the right to require *you* or the owner of the *covered vehicle* to pay for the amount of the betterment.

(4) If *you* and *we* agree, then windshield glass will be repaired instead of replaced.

b.  Pay the actual cash value of the *covered vehicle* minus any applicable deductible. The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*.

c.  Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2.  The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3.  The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned ca mper* is $2,500.

## Limits – Car Rental and Travel Expenses Coverage

### 1. Car Rental Expense

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a.  The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

(1) a dollar amount is shown, then *we* will pay the *daily rental ch arge* up to that dollar amount;

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental ch arge*.

b.  Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

### 2. Travel Expenses

The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

### 3. Rental Car – Repayment of Deductible Expense

The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

### Nonduplication

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered ve hicle* has already received payment:

1.  from, or on behalf of, a party who is legally liable for the lo ss or expense; or

2.  under Uninsured Motor Vehicle Coverage of this policy.

## Exclusions

THERE IS NO COVERAGE FOR:

1. ANY *COVEREDVEH ICLE* THAT IS:

    a. INTENTIONALLY DAMAGED; OR

    b. STOLEN

    BY OR AT THE DIRECTION OF AN *IN-SURED*;

2. ANY *COVERED VEH ICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEH ICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *privatepas sengercar* on a share-the-expense basis;

4. ANY *COVEREDVEH ICLE* DUE TO:

    a. THEFT;

    b. CONVERSION;

    c. EMBEZZLEMENT; OR

    d. SECRETION

    BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVEREDV EHICLE* WITH THE PERMIS-SION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CA R* OR A *NEWLY A C-QUIRED CA R* IF AN *INSURED* VOLUN-TARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZA-TION UNDER AN ACTUAL OR PRE-SUMED SALES AGREEMENT;

6. ANY *COVERED VE HICLE* TO THE EX-TENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVEREDV EHICLE*;

7. a. *LOSS* TO ANY *COVERED VE HICLE* DUE TO *FUNGI*. This exclusion (7.a.) does not apply if the *fungi* are the direct result of a *loss* payable under any of the physical damage coverages provided by this policy.

    b. TESTING OR REMEDIATION OF *FUNGI*, REGARDLESS OF WHETHER OR NOT THE *FUNGI* ARE THE DI-RECT RESULT OF A *LOSS* PAYABLE UNDER ANY OF THE PHYSICAL DAMAGE COVERAGES PROVIDED BY THIS POLICY;

8. *LOSS* TO ANY *COVEREDVEH ICLE* THAT RESULTS FROM:

    a. NUCLEAR REACTION;

    b. RADIATION OR RADIOACTIVE CON-TAMINATION FROM ANY SOURCE; OR

    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VE HICLE* THAT RESULTS FROM THE TAKING OF OR SEI-ZURE OF THAT *COVERED VE HICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. *LOSS* TO ANY *COVEREDVEH ICLE* THAT RESULTS FROM WAR OF ANY KIND;

11. *YOUR CAR* WHILE SUBJECT TO ANY:

    a. LIEN AGREEMENT;

    b. RENTAL AGREEMENT;

    c. LEASE AGREEMENT; OR

    d. SALES AGREEMENT

    NOT SHOWN ON THE DECLARATIONS PAGE;

12. ANY *NON-OWNEDC AR* WHILE IT IS:

    a. BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CARB USINESS*; OR

    b. USED IN ANY BUSINESS OR OCCU-PATION OTHER THAN A *CAR BUS I-NESS*. This exclusion (12.b.) does not apply to a *privatepas sengercar* ;

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

    a. FAILS OR IS DEFECTIVE; OR

    b. IS DAMAGED AS A DIRECT RESULT OF:

        (1) WEAR AND TEAR;

        (2) FREEZING; OR

        (3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

        OF THAT PART OR EQUIPMENT.

    This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

    a. THAT IS NOT LEGAL FOR USE IN OR ON THE *COVEREDVE HICLE* IN THE JURISDICTION WHERE THE *COV-EREDVEH ICLE* IS REGISTERED; OR

    b. THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COV-ERED VEHICLE* IS REGISTERED BE-CAUSE OF HOW OR WHERE THAT

PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle* , then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

a. *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

b. *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

a. DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

b. *OWNED BY* AN *INSURED*; AND

c. NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other

policies issued to an *insured* by one or more of the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for *loss* to *your car* . The physical damage coverages provided by this policy also apply as primary coverage for *loss* to a *car* loaned to *you* by a legally licensed automobile dealer as a *temporary substitute car* or as a demonstrator vehicle if the *car* is being driven by an *insured*.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car* . Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed.

The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor if the termination is because of nonpayment of premium. If the termination is for any other reason, the date such termination is

28
9804A

effective will be at least 20 days after the date *we* mail or electronically transmit a notice of the termination to the creditor. The mailing or electronic transmittal of the notice will be sufficient proof of notice.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

      (1) *You*;

      (2) The repairer; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

      (1) *You*;

      (2) The owner of such vehicle;

      (3) The repairer; or

      (4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;

   b. The *insured* who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

## INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

2. **Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

3. **Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

      (1) making settlements;

      (2) securing and giving evidence; and

      (3) attending, and getting witnesses to attend, depositions, hearings, and trials.

   b. The *insured* must not, except at his or her own cost, voluntarily:

      (1) make any payment to others; or

      (2) assume any obligation to others

      unless authorized by the terms of this policy.

   c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

4. **Questioning Under Oath**

   Under:

   a. Liability Coverage, each *insured*;

   b. Medical Payments Coverage, Total Disability Coverage, Death, Dismemberment and Loss of Sight Coverage, Uninsured Motor Vehicle Coverage, or Underinsured Motor Vehicle Coverage each *insured*, or any other *person* or organization making claim or seeking payment; and

   c. Physical Damage Coverages, each *Insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

   must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or organization must answer questions

29
9804A

under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

**5. Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft;

c. allow *us* to:

   (1) inspect any damaged property before its repair or disposal;

   (2) test any part or equipment before that part or equipment is removed or repaired; and

   (3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

   (1) records;

   (2) receipts; and

   (3) invoices

   that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

**6. Other Duties Under Medical Payments Coverage, Death, Dismemberment and Loss of Sight Coverage, Total Disability Coverage, Uninsured Motor Vehicle Coverage, and Underinsured Motor Vehicle Coverage**

A *person* making claim under:

a. Medical Payments Coverage, Death, Dismemberment and Loss of Sight Coverage, Total Disability Coverage, Uninsured Motor Vehicle Coverage, or Underinsured Motor Vehicle Coverage must:

   (1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

   (2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

   (3) provide written authorization for *us* to obtain:

      (a) medical bills;

      (b) medical records;

      (c) wage, salary, and employment information; and

      (d) any other information *we* deem necessary to substantiate the claim.

      If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

      If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

   (4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. Uninsured Motor Vehicle Coverage must:

   (1) report an accident, involving a motor vehicle whose owner and driver remain unknown, to the police within 24 hours and to *us* within 30 days; and

   (2) if making a claim for *property damage*,

      (a) protect the *car* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

      (b) allow *us* to:

         (i) inspect any damaged property before its repair or disposal;

         (ii) test any part or equipment before that part or equipment is removed or repaired; and

         (iii) move the *car* at *our* expense in order to conduct such inspection or testing;

      (c) provide *us* all:

         (i) records;

         (ii) receipts; and

         (iii) invoices

         that *we* request and allow *us* to make copies; and

      (d) not abandon the *car* to *us*;

c.  Uninsured Motor Vehicle Coverage and Underinsured Motor Vehicle Coverage must send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

d.  Total Disability Coverage must:

(1)  make a claim under this policy;

(2)  report to us when that *person* has a *total isability*; and

(3)  provide proof of continued *total disability* when *we* ask for it.

# GENERAL TERMS

1.  **When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

2.  **Where Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

a.  in the United States of America and its territories and possessions;

b.  in Canada; and

c.  while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

3.  **Newly Owned or Newly Leased Car**

If *you* want to insure a *car* newly *owned b yy ou* with the *State F arm C ompanies* after that *car* ceases to be a *newlyacq uired; ar*, then *you* must either:

a.  request *we* replace the *car* currently shown on the Declarations Page of this policy with the *car* newly *ownedbyyou*  and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(1)  before the *car* newly *owned by you* ceases to be a *newly acqui red car* then that *car* newly *ownedbyyou*  will be insured by this policy as *yourcar* beginning on the date the *car* newly *ownedbyyou*  is delivered to *you*. The added amount due will be calculated based on that date; or

(2)  after the *car* newly *owned by you* ceases to be a *newlyacqu iredcar* , then

that *car* newly *ownedbyyou*  will be insured by this policy as *yourcar* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b.  apply to the *State F arm Companies* for a separate policy to insure the *car* newly *ownedbyyou* . Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

4.  **Changes to This Policy**

a.  **Changes in Policy Provisions**

*We* may only change the provisions of this policy by:

(1)  issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

(2)  revising this policy to give broader coverage without an additional premium charge.  If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Arkansas without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

b.  **Change of Interest**

(1)  No change of interest in this policy is effective unless *we* consent in writing.

(2)  If a named insured dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

(a)  any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

(b)  the legal representative of the deceased named insured.

31
9804A

This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

Policy notice requirements are met by mailing the notice to the deceased named insured's last known address.

**c. Joint and Individual Interests**

If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

**5. Premium**

a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

c. The premium for this policy may vary based upon the purchase of other insurance from the *State Farm Companies*.

d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

(1) *Your car*, or its use, including annual mileage;

(2) The *persons* who regularly drive *your car*, including newly licensed family members;

(3) *Your* marital status; or

(4) The location where *your car* is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

**6. Renewal**

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 7. and 8. below.

**7. Nonrenewal**

If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent address provided to *us* by *you* as the policy address. The mailing of the notice will be sufficient proof of notice.

**8. Cancellation**

**a. How You May Cancel**

*You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

**b. How and When We May Cancel**

*We* may cancel this policy by mailing or delivering a written notice to the most recent address provided to *us* by *you* as the policy address. The notice will provide the date cancellation is effective.

The mailing of the notice will be sufficient proof of notice.

(1) If *we* mail or deliver a cancellation notice because the premium is not paid when due, then the date cancellation is effective will be at least 10 days after the date *we* mail or deliver the cancellation notice.

Otherwise, the date cancellation is effective will be at least 20 days after the date *we* mail or deliver the cancellation notice.

(2) After this policy has been in force for more than 59 days, *we* will not cancel this policy before the end of the current policy period unless:

(a) the premium is not paid when due; or

(b) *you*, any *resident relative*, or any other *person* who usually drives *your car* has had his or her driver's license under suspension or revocation during the 180 days immediately before the effective date of the policy or during the policy period.

c. **Return of Unearned Premium**

If *you* cancel this policy, then premium may be earned on a short rate basis. If *we* cancel this policy, then premium will be earned on a pro rata basis.

Any unearned premium may be returned within a reasonable time after cancellation. Delay in the return of any unearned premium does not affect the cancellation date.

9. **Assignment**

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*.

10. **Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

11. **Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

12. **Our Right to Recover Our Payments**

Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*.

a. **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(1) doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through *our* representatives when *we* ask.

The costs of collection will be shared in the proportion *we* and the *person* to or for whom *we* have made payment benefit from the recovery.

b. **Reimbursement**

If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(1) hold in trust for *us* the proceeds of any recovery; and

(2) reimburse *us* to the extent of *our* payment.

The costs of collection will be shared in the proportion *we* and the *person* to or for whom *we* have made payment benefit from the recovery.

c. Under Underinsured Motor Vehicle Coverage, *we* are entitled to an assignment, in the amount of *our* payment, of any judgment obtained against the party liable for the *bodily injury* by the *person* or organization to or for whom *we* make payment.

d. *We* have the right to recover *our* payments only if the total recovery by the *insured* exceeds the total amount of that *insured's* incurred damages.

13. **Legal Action Against Us**

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

a. Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us*.

b. Medical Payments Coverage, Death, Dismemberment and Loss of Sight Coverage, Total Disability Coverage, and Physical Damage Coverages if the legal action relating to the coverage is brought against *us* within the time required by law.

c. Uninsured Motor Vehicle Coverage and Underinsured Motor Vehicle Coverage if the *insured* or that *insured's* legal representative within the time required by law:

(1) presents either an Uninsured Motor Vehicle Coverage claim or an Underinsured Motor Vehicle Coverage claim to *us*; and

(2) files a lawsuit in accordance with the **Deciding Fault and Amount** provision of the involved coverage.

Except as provided in c.(2) above, no other legal action may be brought against *us* relating to Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage for any other causes of action that arise out of or are related to these coverages until there has been full compliance with the provisions titled **Consent to Settlement** and **Deciding Fault and Amount**.

### 14. Conformed to Statute

Liability Coverage for *bodilyinju ry* and damage to property provided by this policy is done so in accordance with the coverage defined in the Arkansas Motor Vehicle Safety Responsibility Act and is subject to all of its provisions.

### 15. Choice of Law

Without regard to choice of law rules, the law of the State of:

a.   Arkansas will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b.   Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

    (1)   Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

    (2)   Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

### 16. Severability

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a.   such provision will remain in full force to the extent not held invalid or unenforceable; and

b.   all other provisions of this policy will remain valid and enforceable.

## 6904A.2 AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

1. The following is added to exclusion 15.b. of **Liability Coverage**, exclusion 2.m.(2) of **Medical Payments Coverage, Death, Dismemberment and Loss of Sight Coverage, and Total Disability Coverage**, and exclusion 19.b. of **Physical Damage Coverages**:

   This exclusion does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

2. **THIS POLICY**

   The following is added:

   5. *Your* purchase of this policy may allow:

      a. *you* to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

      b. the premium or price for other products or services purchased by *you*, including non-insurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

3. **DEFINITIONS**

   *State Farm Companies* is changed to read:

   *State Farm Companies* means one or more of the following:

   1. State Farm Mutual Automobile Insurance Company;

   2. State Farm Fire and Casualty Company; and

   3. Subsidiaries or affiliates of either 1. or 2. above.

4. **LIABILITY COVERAGE**

   a. **Insuring Agreement and Supplementary Payments** are replaced by the following:

      **Insuring Agreement**

      1. *We* will pay damages an *insured* becomes legally liable to pay because of:

         a. *bodily injury* to others; and

         b. damage to property

         caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

      2. *We* have the right to:

         a. investigate, negotiate, and settle any claim or lawsuit;

         b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

         c. appeal any award or legal decision

         for damages payable under this policy's Liability Coverage.

      **Supplementary Payments**

      *We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident:

      1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

      2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

         a. that seeks damages payable under this policy's Liability Coverage; and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

b. against which *we* defend an *insured* with attorneys chosen by *us*.

*We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200

for each day an *insured* attends, at *our* request:

(1) an arbitration;

(2) a mediation; or

(3) a trial of a lawsuit; and

b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

b. **Exclusions**

   (1) The exception to exclusion 8. is changed to read:

   This exclusion does not apply to:

   a. *you*;

   b. any *resident relative*; or

   c. any agent, employee, or business partner of a. or b. above

   while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

   (2) The exception to exclusion 11. is changed to read:

   This exclusion does not apply to damage to a:

   a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

   b. residence while rented to or leased to an *insured*; or

   c. private garage while rented to or leased to an *insured*;

c. **If Other Liability Coverage Applies**

   The first paragraph of item 2. is deleted and replaced by the following:

   2. The Liability Coverage provided by this policy applies as primary coverage for:

      a. the ownership, maintenance, or use of *your car* or a *trailer* attached to it;

Page 2 of 5

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

6904A.2

b. the maintenance or use of a *car* loaned to *you* by a legally licensed automobile dealer as a *temporary substitute car* or as a demonstrator vehicle if the *car* is being maintained or used by *you* or a *resident relative*; and

c. the maintenance or use of a *car* rented or leased by *you* from a *car* rental company if the *car* is being maintained or used by *you* or a *resident relative*.

5. **MEDICAL PAYMENTS COVERAGE, DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE, AND TOTAL DISABILITY COVERAGE**

a. **Additional Definitions**

*Insured* is changed to read:

*Insured* means:

1. *you* and *resident relatives*; and

2. any other *person* who is not provided other similar coverage as a named insured or an additional insured under another valid and collectible automobile insurance policy while:

a. *occupying*:

(1) *your car*;

(2) a *newly acquired car*;

(3) a *temporary substitute car*; or

(4) a *trailer* while attached to a *car* described in (1), (2), or (3) above.

Such vehicle must be used by a *person* who is an *insured* under Liability Coverage;

b. *occupying*:

(1) a *car* loaned to *you* by a legally licensed automobile dealer for use as a demonstrator vehicle; or

(2) a *non-owned car* rented or leased by *you* from a *car* rental company.

The vehicle must be operated by *you* or a *resident relative*; or

c. that *person* is either:

(1) not *occupying* a self-propelled vehicle, or

(2) *occupying* a motorcycle, and

struck by *your car*, a *newly acquired car*, or a *temporary substitute car*, and such *car* is driven by a *person* who is an *insured* under Liability Coverage of this policy.

b. **Exclusions**

(1) Item 1. is changed to read:

1. **Medical Payments Coverage**

THERE IS NO COVERAGE FOR AN *INSURED* WHILE *OCCUPYING*, OR WHO IS STRUCK AS A *PEDESTRIAN* BY, A MOTOR VEHICLE *OWNED BY* THAT *INSURED*, *YOU*, OR A *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*.

(2) The exception to exclusion 2.d. is changed to read:

This exclusion does not apply to:

a. *you*;

b. any *resident relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

c. **If Other Medical Payments Coverage, Total Disability Coverage or Similar Vehicle Insurance Applies**

The following is added:

If an *insured* sustains *bodily injury* while *occupying* a *car*:

a. loaned to *you* by a legally licensed automobile dealer for use as a demonstrator vehicle; or

b. rented or leased by *you* from a *car* rental company;

then the coverage provided by this policy for *medical expenses*, funeral expenses or *weekly indemnity* is primary to any coverage provided by the dealer or rental company.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

6904A.2

6. **UNINSURED MOTOR VEHICLE COVERAGE – BODILY INJURY**

    a. **Additional Definitions**

    The following is added to item 3. of *insured*:

    *Insured* means:

    3. any other *person* while *occupying*:

        e. a *non-owned car* rented or leased by *you* from a *car* rental company. The vehicle must be operated by *you* or a *resident relative*.

    b. **If Other Uninsured Motor Vehicle Coverage Applies**

    The following is added to the first paragraph of item 2.:

    The Uninsured Motor Vehicle Coverage provided by this policy also applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying* a *car* rented or leased by *you* from a *car* rental company.

7. **UNDERINSURED MOTOR VEHICLE COVERAGE**

    a. **Additional Definitions**

    The following is added to item 3. of *insured*:

    *Insured* means:

    3. any other *person* while *occupying*:

        e. a *non-owned car* rented or leased by *you* from a *car* rental company. The vehicle must be operated by *you* or a *resident relative*.

    b. **If Other Underinsured Motor Vehicle Coverage Applies**

    The following is added to the first paragraph of item 2.:

    The Underinsured Motor Vehicle Coverage provided by this policy also applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying* a *car* rented or leased by *you* from a *car* rental company.

8. **PHYSICAL DAMAGE COVERAGES**

    **If Other Physical Damage Coverage or Similar Coverage Applies**

    The following is added to the first paragraph of item 3:

    The physical damage coverages provided by this policy also apply as primary coverage

for *loss* to a *car* rented or leased by *you* from a *car* rental company if the *car* is being driven by an *insured*.

9. **GENERAL TERMS**

    a. The following is added to 2. **Where Coverage Applies**:

    Death, Dismemberment and Loss of Sight Coverage and Total Disability Coverage apply anywhere in the world for *you* and *resident relatives*.

    b. The following is added:

    **Limited Coverage in Mexico**

    This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

    Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

    a. **Liability Coverage**

    For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

    *We* may, in addition to the damages described in item 1. of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at our option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment.

    b. **Medical Payments Coverage**

    c. **Physical Damage Coverages**

    Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive**

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

Coverage and Collision Coverage provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF ARKANSAS IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of Arkansas in the United States of America.

c. The following is added to 4. **Changes to This Policy:**

    d. **Change of Policy Address**

       *We* may change the named insured's policy address as shown on the Declarations Page and in *our* records to the most recent address provided to *us* by:

       1. *you*; or

       2. the United States Postal Service.

d. Paragraph c. of 5. Premium is changed to read:

    c. The premium for this policy may vary based upon:

       (1) the purchase of other products or services from the *State Farm Companies*;

       (2) the purchase of products or services from an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

       (3) an agreement, concerning the insurance provided by this policy, that the *State Farm Companies* has with an organization of which *you* are a member, employee, subscriber, licensee, or franchisee.

e. 7. **Nonrenewal** is changed to read:

    7. **Nonrenewal**

       If *we* decide not to renew this policy, then, at least 30 days before the end of the current policy period, *we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page.

f. The first paragraph of b. **How and When We May Cancel** of 8. **Cancellation** is changed to read:

    *We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2010

6904A.2